# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# 1:19-cv-00034-FDW

| | |
|---|---|
| ELI ALVAREZ, )<br>)<br>        **Plaintiff,** )<br>)<br>vs. )<br>)<br>FNU DAVIS, et al., )<br>)<br>        **Defendants.** )<br>_____ ) | **ORDER** |

**THIS MATTER** is before the Court on initial review of Plaintiff's Amended Complaint [Doc. 10], filed under 42 U.S.C. § 1983. See 28 U.S.C. §§ 1915(e) and 1915A.

On April 22, 2019, the Court entered an order waiving the initial filing fee and directing monthly payments to be made from Plaintiff's prison account. [Doc. 7]. Plaintiff, therefore, is proceeding in forma pauperis.

## I. BACKGROUND

Pro se Plaintiff Eli Alvarez, a North Carolina state inmate currently incarcerated at Polk Correctional Institution in Butner, North Carolina, filed this action on January 29, 2019, pursuant to 42 U.S.C. § 1983. [Doc. 1]. Plaintiff filed an Amended Complaint on June 11, 2019. [Doc. 10]. Plaintiff alleges that Defendants violated his Eighth and Fourteenth Amendment rights under the U.S. Constitution in relation to an alleged sexual assault on October 8, 2018, and subsequent events. In his Complaint, Plaintiff names the following persons as Defendants: (1) FNU Davis, identified as a correctional officer at Marion Correctional Institution ("Marion"); (2) FNU Morris, identified as a correctional officer at Marion; (3) Thomas Hamilton, identified as a Unit Manager

at Marion; (4) FNU James, identified as a Unit Manager and P.R.E.A.[1] Investigator at Marion; (5) FNU Ervin, identified as an Assistant Superintendent of Programs and P.R.E.A. support personnel at Marion; (6) Donny Watkins, identified as Assistant Superintendent at Marion; and (7) Hubert Corpening, identified as superintendent of Marion. [Doc. 10 at 2-4].

The following allegations by Plaintiff are taken as true for the purpose of this initial review:

> As I was attending a tort hearing in a conference room Defendants N. Davis, and B. Morris sexually abused/assaulted me (Plaintiff) while I was restrained to a table with handcuffs, waist chain, and leg irons that where locked into a locking device on the bottom of the table preventing me from getting off the chair, C.O. Morris bend down to unlock my leg irons from the locking device and while down there he reached behind me and grabed my buttocks real hard, when I tried to jump off the chair C.O. Davis jumped on top of me and placed his forearm on the back of my neck and pin me down to the table face down and started rubbing his penis on my pack saying derogatory things that they was doing to do to me.

[Id. at 6 (spelling and grammatical errors uncorrected].

As for Defendant Hamilton, Plaintiff alleges that he failed to initiate a medical screening or have photographs of the Plaintiff's injuries taken when Plaintiff reported the assault. Plaintiff alleges that Defendant Hamilton did not respond to his report of sexual assault for four days, did not send Plaintiff for medical screening for 13 days, and refused to take photographs of Plaintiff's injuries until October 30, 2018, all in an attempt to allow Plaintiff's injuries time to heal and to cover up the assault. [Id. at 6-7].

As for Defendant FNU James, Plaintiff alleges that Defendant James was the P.R.E.A. investigator assigned to Plaintiff's complaint. Plaintiff alleges that Defendant James was supposed to start an investigation of a sexual assault as soon as one is reported. Plaintiff alleges that

---

[1] P.R.E.A. stands for the Prison Rape Elimination Act, 34 U.S.C. § 30301. It seeks to establish "zero tolerance" for the incidence of prison rape. The purpose of this Act is to protect inmates in correctional facilities from sexual abuse and sexual assault. Gadeson v. Reynolds, No. 2:08-3702-CMC-RSC, 2009 WL 4572872, at *3 (D.S.C. Dec. 4, 2009).

Defendant James did not begin an investigation for 15 days. [Id. at 7]. Plaintiff alleges Defendant James delayed in beginning the investigation to allow time for Plaintiff's injuries to heal. Plaintiff showed Defendant James his injuries and demanded that photographs be taken. Defendant James refused and told Plaintiff that Defendant James would note the injuries in his report, which he did not do. [Id. at 8]. Plaintiff alleges Defendant James tried to cover up the incident in violation of P.R.E.A. policy. [Id.].

As for Defendant Ervin, Plaintiff alleges he was assigned as Plaintiff's P.R.E.A. support personnel. Plaintiff alleges that Defendant Ervin never followed up on Plaintiff's requests for photographs. Plaintiff also alleges that Plaintiff reported to Defendant Ervin numerous times that Defendants Davis and Morris continued to harass the Plaintiff after the incident, telling the Plaintiff that they were going to rape him. [Id. at 8]. Plaintiff alleges that Defendant Ervin was "deliberately indifferent" in allowing the officers to continuously harass Plaintiff after the incident and failed to protect him. [Id. at 9].

As for Defendant Corpening, Plaintiff alleges that he wrote Defendant Corpening before and after the assault. Plaintiff alleges he spoke with Defendant Corpening once regarding the assault and Defendant Corpening failed to take any action to investigate, despite assurances to the contrary. [Id. at 9]. Plaintiff alleges that he told Defendant Corpening that officers were still harassing him during the P.R.E.A. investigation and Corpening did nothing. Instead, Defendant Corpening put Plaintiff in "lock up for over (11) months without seeing the classification board in violation of policy." [Id. at 9]. Plaintiff further alleges that Corpening transferred Plaintiff to maximum security prison in retaliation for the sexual assault incident. Plaintiff alleges that Corpening reported that Plaintiff had 14 infractions when Plaintiff really had seven. [Id.].

As for Defendant Watkins, Plaintiff alleges that he wrote Watkins before and after the

3

assault regarding staff sexual abuse. Plaintiff alleges he spoke with Defendant Watkins on January 24, 2019, and Watkins said, "Get the hell out of my house before something worse happens to you, what my boys did to you was nothing!" [Id. at 10]. Plaintiff alleges this conversation took place the same day he was transferred to maximum security. [Id.]. Plaintiff further alleges that Defendant Watkins knew what was going to happen to Plaintiff and encouraged "them" to attack Plaintiff. [Id.].

Finally, Plaintiff claims these acts by Defendants were done in retaliation for Plaintiff's numerous complaints and grievances and for Plaintiff providing information regarding staff bringing contraband, cell phones, and drugs into the prison. [Id. at 10].

For his injuries, Plaintiff claims that he suffered various physical injuries as a result of the assault, as well as mental and emotional injury. [Id. at 11]. Plaintiff seeks monetary relief for his injuries. [Id.].

## II. STANDARD OF REVIEW

Because Plaintiff is proceeding in forma pauperis, the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "frivolous or malicious [or] fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2). Furthermore, under § 1915A the Court must conduct an initial review and identify and dismiss the complaint, or any portion of the complaint, if it is frivolous, malicious, or fails to state a claim upon which relief may be granted; or seeks monetary relief from a defendant who is immune to such relief.

In its frivolity review, this Court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). Furthermore, a pro se complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972).

However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his Complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

## III. DISCUSSION

### A. Eighth Amendment

#### 1. Sexual Assault

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments," U.S. CONST. amend. VIII, and protects prisoners from the "unnecessary and wanton infliction of pain." Whitley v. Albers, 475 U.S. 312, 319 (1986). To establish an Eighth Amendment claim, an inmate must satisfy both an objective component–that the harm inflicted was sufficiently serious–and a subjective component–that the prison official acted with a sufficiently culpable state of mind. Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). The Eighth Amendment protects inmates from sexual abuse. Schwenk v. Hartford, 204 F.3d 1187, 1196-97 (9th Cir. 2000).

The Court finds that this action survives initial review as to Defendants Davis and Morris regarding the sexual assault. That is, taking Plaintiff's allegations as true for the purposes of this initial review, Plaintiff states an Eighth Amendment claim against Defendants Davis and Morris based on his allegations that these Defendants sexually assaulted him.

#### 2. Failure to Protect

A prisoner's Eighth Amendment rights may also be violated where a prison official fails to protect an inmate from harm caused by other prisoners or another prison official. The negligent failure to protect an inmate from assaults by other prisoners, or by other prison guards, does not rise to the level of an unconstitutional violation. Davidson v. Cannon, 474 U.S. 344, 348 (1986). To show deliberate indifference, a plaintiff must allege that the prison official had actual

5

knowledge of an excessive risk to the plaintiff's safety. Danser v. Stansberry, No. 13-1828, 2014 WL 2978541, at *5 (4th Cir. Sept. 12, 2014). In other words, the prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). Further, the deprivation alleged must be, objectively, sufficiently serious." Id. at 235-36 (citation and internal quotation marks omitted); see Brown v. N.C. Dep't of Corr., 612 F.3d 720, 723 (4th Cir. 2010) ("[A] prisoner must allege a serious or significant physical or emotional injury resulting from the challenged conditions.") (quoting Odom v. S.C. Dep't of Corr., 349 F.3d 765, 770 (4th Cir. 2003))).

Here, Plaintiff's allegations against Defendants Hamilton, Ervin, and Corpening for failure to protect do not survive initial review. While these Defendants may have been aware of a substantial risk of serious harm in that Defendants Morris and Davis continued to harass Plaintiff after the alleged sexual assault, Plaintiff does not allege an objectively serious injury as a result of their failure to protect. At best, Plaintiff alleges that he was harassed by Defendants Morris and Davis. The Court, therefore, finds that Plaintiff's failure to protect claims against Defendants Hamilton, Ervin, and Corpening fail initial review.

Plaintiff's allegations for failure to protect against Defendant Watkins, on the other hand, do survive initial review. Namely, Plaintiff alleges that Watkins knew that Defendants Morris and Davis intended to attack the Plaintiff and, in fact, encouraged them to do so. Plaintiff also alleges that he wrote Defendant Watkins specifically about staff sexual abuse before the alleged assault. See Farmer v. Brennan, 511 U.S. 825 (1994) (holding that deliberate indifference to the substantial risk of sexual assault violates prisoners' rights under the Cruel and Unusual Punishment Clause of the Eighth Amendment). As such, Plaintiff's Eighth Amendment claim based on the failure to

6

protect against Defendant Watkins survives initial review.

### 3. Custody Level

To the extent Plaintiff sought to state a claim under the Eighth Amendment for cruel and unusual punishment as a result of his 11 months in segregation and/or transfer to a higher security facility on Defendant Corpening's order, Plaintiff has failed to do so. Plaintiff's custody level does not satisfy the very high standards for cruel and unusual punishment under the Eighth Amendment. See De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003).[2] In other words, even if Plaintiff is correct that he is being held at the wrong custody level, this does not amount to cruel and unusual punish under the Eighth Amendment. Accord Lattimore v. Doe., No. 1:13-cv-692, 2014 WL 197807, at **1-3 (M.D.N.C. Jan. 14, 2014).

### B. Fourteenth Amendment

### 1. Custody Level

To the extent that Plaintiff alleges that Defendant Corpening violated his Fourteenth Amendment due process rights based on Plaintiff's security classification and custody status, to prevail on a procedural due process claim, an inmate must first demonstrate that he was deprived of "life, liberty, or property" by governmental action. Bevrati v. Smith, 120 F.3d 500, 502 (4th Cir. 1997). Although prisoners are afforded some due process rights while incarcerated, those liberty interests are limited to "the freedom from restraint which, while not exceeding the sentence in such and unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995).

---

[2] The Court notes that Defendant Corpening may still be held liable for these orders to the extent Plaintiff can show they were made in retaliation for Plaintiff's exercise of his First Amendment right to redress grievances, as addressed below.

The Supreme Court has repeatedly held that a prisoner has no constitutional right under the due process clause to be incarcerated in a particular facility or to be held in a specific security classification, barring some showing by the prisoner that his confinement posed an atypical and significant hardship in relationship to the ordinary incidents of prison life.  See Wilkinson v. Austin, 545 U.S. 209 (2005); Olim v. Wakinekona, 461 U.S. 238, 245 (1983); Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976); Hewitt v. Helms, 459 U.S. 460, 468 (1976).  Moreover, changes "in a prisoner's location, variations of daily routine, changes in conditions of confinement (including administrative segregation), and the denial of privileges [are] matters which every prisoner can anticipate [and which] are contemplated by his original sentence to prison."  Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991); Slezak v. Evatt, 21 F.3d 590, 594 (4th Cir. 1994) ("The federal constitution itself vests no liberty interest in inmates in retaining or receiving any particular security or custody status '[a]s long as the [challenged] conditions or degree of confinement ... is within the sentence imposed ... and is not otherwise violative of the Constitution.'") (quoting Hewitt v. Helms, 459 U.S. 460, 468 (1983)).

Plaintiff here has not stated a claim under the Fourteenth Amendment relative to his time in segregation.  Moreover, Plaintiff does not allege any facts showing that this confinement posed an atypical and significant hardship in relationship to the ordinary incidents of prison life.  Thus, Plaintiff fails to state a due process claim based on custody level.

### 2. Denial of Access to the Courts

To the extent Plaintiff alleges he was denied meaningful access to the courts under the Fourteenth Amendment, Plaintiff's claim does not survive initial review.  The Supreme Court stated in Bounds v. Smith, 430 U.S. 817 (1977), that prisoners must have meaningful access to the courts.  The "meaningful access" referred to in Bounds does not, however, entitle a plaintiff to

8

total or unlimited access. See High v. Hamden, No. 03-7832 (E.D.N.C. Dec. 2, 2003), aff'd, 88 Fed. Appx. 604 (4th Cir. Feb. 23, 2004); Moore v. Gray, No. 5:04-CT-918-FL, 2005 WL 3448047, at *1 (E.D.N.C. Jan. 26, 2005), aff'd, 133 F. App'x 913 (4th Cir. 2005) (unpublished). Furthermore, to succeed on a denial of access to courts claim, the inmate must "demonstrate that the alleged shortcomings in the [prison] library or legal assistance program hindered his efforts to pursue a legal claim." Lewis v. Casey, 518 U.S. 343, 351 (1996). For example, meaningful access to courts is denied when an inmate is not permitted to prepare a petition or complaint. See Wrenn v. Freeman, 894 F. Supp. 244, 248 (E.D.N.C. 1995) (citing Wolff v. McDonnell, 418 U.S. 539, 576 (1974)).

While Plaintiff alleges that he was denied proper and full access to certain prison grievance procedures after his assault, he does not allege that he was hindered in his efforts to pursue a legal claim with this Court. This is not enough. See Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994) ("[T]he Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state."). Further, Plaintiff's own filings in this Court demonstrate he was able to timely file an 85-page Complaint, inclusive of exhibits, to seek relief for the alleged constitutional violations at issue. Thus, Plaintiff has not been denied meaningful access to the courts and any Fourteenth Amendment claim on this ground fails initial review.

### C. First Amendment

Although Plaintiff does not specifically reference the First Amendment in his Complaint, he clearly alleges that Defendants' alleged actions were done in retaliation for Plaintiff's numerous complaints, grievances, and reports of staff bringing drugs and contraband into the facility. As such, Plaintiff's retaliation claim against all Defendants survives initial review as it is not clearly frivolous. See Booker v. S.C. Dep't of Corrs., 855 F.3d 533, 540 (4th Cir. 2017) (inmate has

9

clearly established First Amendment right to be free from retaliation for filing grievances).

## IV. CONCLUSION

In sum, the Complaint survives initial review under 28 U.S.C. § 1915(e) and 28 U.S.C. § 1915A as to Plaintiff's Eighth Amendment claim against Defendants Morris and Davis for sexual assault; Plaintiff's Eighth Amendment claim against Defendant Watkins for failure to protect; and Plaintiff's First Amendment claim against all Defendants for retaliation. All other claims brought by Plaintiff will be dismissed in accordance with the terms of this Order.

**IT IS, THEREFORE, ORDERED** that:

1. Plaintiff's allegations survive initial review in accordance with the terms of this Order. See 28 U.S.C. §§ 1915(e); 1915A.

2. This Court recently enacted Local Rule 4.3, which sets forth a procedure to waive service of process for current and former employees of the North Carolina Department of Public Safety ("NCDPS") in actions filed by North Carolina State prisoners. The Clerk of Court shall commence the procedure for waiver of service as set forth in Local Rule 4.3 for all Defendants, who are current or former employees of NCDPS.

Signed: October 30, 2019

Frank D. Whitney
Chief United States District Judge