IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:19-cv-00034-MR

| ELI ALVAREZ, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM OF** |
| vs. | ) | **DECISION AND ORDER** |
| | ) | |
| FNU DAVIS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**THIS MATTER** comes before the Court on Defendants' Motion for Summary Judgment. [Doc. 36].

**I.    PROCEDURAL BACKGROUND**

*Pro se* Plaintiff Eli Alvarez ("Plaintiff") brings this action pursuant to 42 U.S.C. § 1983 for violation of his civil rights while incarcerated at Marion Correctional Institution ("Marion"). [Doc. 1]. Plaintiff amended his complaint before the Court conducted its initial review.[1] [Doc. 10]. In his Amended Complaint, Plaintiff named the following Defendants, in their individual and official capacities: (1) FNU Davis, identified as a correctional officer at Marion; (2) FNU Morris, identified as a correctional officer at Marion; (3)

---

[1] Plaintiff's original Complaint was signed under penalty of perjury, [Doc. 1 at 7], but his Amended Complaint was not, [see Doc. 10].

Thomas Hamilton, identified as a Unit Manager at Marion; (4) FNU James, identified as a Unit Manager and PREA[2] Investigator at Marion; (5) FNU Ervin, identified as an Assistant Superintendent of Programs and PREA support personnel at Marion; (6) Donny Watkins, identified as Assistant Superintendent at Marion; and (7) Hubert Corpening, identified as Superintendent of Marion. [Id. at 2-4]. Plaintiff alleged that Defendants violated his rights under the Eighth and Fourteenth Amendments in relation to an alleged sexual assault on October 8, 2018. Plaintiff claimed that Defendants Davis and Morris sexually assaulted while Plaintiff was restrained to a table in a prison conference room for a tort hearing. Plaintiff claimed that Defendants Hamilton, James, Ervin, and Corpening delayed in responding to and/or investigating Plaintiff's report of sexual assault to allow Plaintiff's injuries to heal and to cover up the assault. Plaintiff claimed that Defendant Watkins knew the assault was going to occur and encouraged Defendants Davis and Morris to assault Plaintiff. Finally, Plaintiff claimed that the alleged acts by all Defendants were in retaliation for Plaintiff's numerous complaints and grievances and for Plaintiff providing information

---

[2] PREA stands for the Prison Rape Elimination Act, 34 U.S.C. § 30301. It seeks to establish "zero tolerance" for the incidence of prison rape. The purpose of this Act is to protect inmates in correctional facilities from sexual abuse and sexual assault. Gadeson v. Reynolds, No. 2:08-3702-CMC-RSC, 2009 WL 4572872, at *3 (D.S.C. Dec. 4, 2009).

regarding staff bringing contraband, cell phones, and drugs into the prison. [Id. at 6-10].

Based on these allegations, Plaintiff's Amended Complaint survived this Court's initial review under 28 U.S.C. §§ 1915(e)(2) and 1915A as to his Eighth Amendment sexual assault claim against Defendants Morris and Davis, his Eighth Amendment failure to protect claim against Defendant Watkins, and his First Amendment retaliation claim against all Defendants.[3] [Doc. 11].

On February 5, 2021, Defendants moved for summary judgment of pursuant to Rule 56 of the Federal Rules of Civil Procedure. [Doc. 36]. In support of their summary judgment motion, Defendants submitted a memorandum; Affidavits of Nicholas Davis, Bradley Morris, Thomas Hamilton, Jeffrey James, and Donald Watkins; Plaintiff's grievance records; the Incident Report for the subject incident; photographs of Plaintiff; a letter from Marion Police Department Detective Russell J. Hink declining to investigate Plaintiff's written complaint; an NCDPS PREA Incident Detail Report related to the incident; Defendants' discovery responses; unpublished case law; and video footage of the alleged sexual assault.

---

[3] Plaintiff's remaining claims were dismissed on initial review. [Doc. 11 at 11].

[Docs. 37, 38, 38-1 through 38-14; see Docs. 39, 41].

The Court entered an order in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the requirements for filing a response to the summary judgment motion and of the manner in which evidence could be submitted to the Court. [Doc. 40]. The Plaintiff was specifically advised that he "may not rely upon mere allegations or denials of allegations in his pleadings to defeat a summary judgment motion." [Id. at 2]. Rather, he must support his assertion that a fact is genuinely disputed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulation (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." [Id. (citing Fed. R. Civ. P. 56(c)(1)(a))]. The Court further advised that, "[i]f Plaintiff has any evidence to offer to show that there is a genuine issue for trial," "he must now present it to this Court in a form which would otherwise be admissible at trial, i.e., in the form of affidavits or unsworn declarations."

> An affidavit is a written statement under oath; that is, a statement prepared in writing and sworn before a notary public. An unsworn statement, made and signed under the penalty of perjury, may also be submitted. Affidavits or statements must be presented by Plaintiff to this Court no later than fourteen (14) days from the date of this Order and must be filed in duplicate.

4

[Id. at 2-3 (citing Fed. R. Civ. P. 56(c)(4))].

Plaintiff did not respond to Defendants' summary judgment motion.[4] Plaintiff's forecast of evidence, therefore, consists of the allegations in Plaintiff's original Complaint and the averments in the Affidavits attached to Plaintiff's Amended Complaint made on Plaintiff's personal knowledge.

This matter is now ripe for adjudication.

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

---

[4] Because Plaintiff's original Complaint was signed under penalty of perjury, it is considered for its evidentiary value here despite being superseded by Plaintiff's Amended Complaint. See Goodman v. Diggs, 986 F.3d 493, 498 (4th Cir. 2021) (holding the district court erred in failing to consider a prisoner plaintiff's verified, though superseded, complaints as affidavits on summary judgment). The original Complaint was made against Defendants Davis and Morris, only, for their alleged sexual assault. [Doc. 1]. Although Plaintiff's Amended Complaint was not verified, Plaintiff submitted two substantially similar affidavits with his Amended Complaint. [Doc. 10-1 at 38-41, 49-53]. Plaintiff prepared these Affidavits "for the purpose of allowing the magistrate/Attorney General to determine if there is probable cause to charge" the Defendants. [Id. at 53]. The Affidavits allege facts consistent with Plaintiff's original Complaint and are, therefore not separately considered below.

5

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. Rather, the nonmoving party must oppose a proper summary judgment motion with citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials" in the record. See id.; Fed. R. Civ. P. 56(c)(1)(a). Namely, the nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. Facts, however, "must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007). As the Supreme Court has emphasized,

> "[w]hen the moving party has carried its burden under Rule 56(c), the opponent must do more than simply show there is some metaphysical doubt as to the material facts …. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S. Ct. 1348 (1986) (footnote omitted). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-28, 106 S. Ct. 2505 (1986). When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

Scott v. Harris, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776 (2007).

### III. FACTUAL BACKGROUND

The forecast of evidence, in the light most favorable to the non-movant, is as follows.

Plaintiff was assigned to restrictive housing, E-Unit, on January 8, 2018 for assaulting staff with a weapon and he remained there at all relevant times. [Doc. 38-10 at 7]. From January 1, 2018 to January 31, 2019, Plaintiff filed 17 grievances. Plaintiff made "a plethora of false allegations and unfounded accusations" regarding staff sexual harassment, staff sexual abuse, staff contraband, staff retaliation during pending litigation, staff intimidation, and problems and interference with Plaintiff's food trays. [Id. at 5]. None of these claims were substantiated. [See id.].

At the relevant times, Defendants Nicholas Davis and Bradley Morris were Correctional Officers at Marion. [Doc. 38-1 at ¶ 3: Davis Aff.; Doc. 38-2 at ¶ 3: Morris Aff.]. Defendant Thomas Hamilton was an Assistant Housing Unit Manager, [Doc. 38-3 at ¶ 3: Hamilton Aff.]; Defendant James was a Correctional Housing Unit Manager, [Doc. 38-7 at ¶ 3: James Aff.]; Defendant Mark Ervin was a Program Director, PREA Support Person, and Victim Services Coordinator, [Doc. 38-10 at 4]; Defendant Donald Watkins was the Assistant Superintendent at Marion, [Doc. 38-11 at ¶ 3: Watkins Aff.]; and Defendant Hubert Corpening was the Superintendent at Marion, Doc. 38-10 at 4].

Plaintiff, in his verified complaint, alleges that on October 8, 2018, Defendants Davis and Morris escorted Plaintiff to a hearing for tort claims by

Plaintiff involving these Defendants. Plaintiff alleges that Defendants Davis and Morris were "very upset" about the hearing and decided to retaliate against Plaintiff. Plaintiff alleges that after the hearing, while he was "fully restrained with cuffs, chain, and leg irons," Defendant Morris grabbed Plaintiff's buttocks and Defendant Davis jumped on top of Plaintiff, pinning him face down on the table with his forearm and rubbing his penis against Plaintiff's back. Plaintiff alleges that he called for help, but no one responded because they were in a back room with a closed door. [Id. at 2, 4-5].

Defendants, on the other hand, forecast the following evidence regarding this alleged incident. On October 8, 2018, Defendants Davis and Morris escorted Plaintiff to a conference room for a tort claim hearing. [Id. at ¶ 10; Doc. 38-2 at ¶ 10]. Defendant Morris secured Plaintiff's feet to the bottom bar of the table prior to the hearing. [Id.]. After the hearing concluded, Defendants Davis and Morris entered the conference room, removed the restraints that were securing Plaintiff to the table, and escorted Plaintiff back to his assigned cell. [Id.]. Defendant Morris then removed Plaintiff's restraints and secured Plaintiff's door and Defendants returned to their normal duties. [Id.]. There were no hostile words or actions exchanged between Defendants and Plaintiff during these events or any use of force or sexual misconduct by Defendants. [Id. at ¶¶ 11-13; Doc. 38-2 at ¶¶ 11-13].

In support of their summary judgment motion, Defendants submitted video footage of the hearing and the movement of Plaintiff to and from the hearing. The footage, which lasts approximately 45 minutes, is wholly consistent with the sworn testimony of Defendants Morris and Davis.

The video footage entirely contradicts Plaintiff's forecast of evidence on this claim and shows that no assault occurred. Moreover, Plaintiff's other claims depend on the assault having occurred. Because a plaintiff cannot defeat summary judgment by presenting evidence that is blatantly contradicted by the record as a whole, the Court cannot adopt Plaintiff's version of the facts for the purpose of ruling on this motion. See Scott, 550 U.S. at 380, 127 S. Ct. at 1776.

Plaintiff submitted a grievance on October 11, 2018. [Doc. 38-3 at ¶ 10]. The grievance alleged an incident occurring on October 8, 2018 in the Upper E-Unit conference room that implicated the NCDPS Inmate and Sexual Abuse and Sexual Harassment Policy ("PREA Policy"). [See id.]. The grievance was screened, and a Step One response completed the same day. [Id.]. The grievance was then forwarded to Step Two for a formal response and reported to the PREA compliance manager. [Id.]. The PREA compliance manager assigned Defendant James to investigate the incident.

[Id.]. Defendant Ervin was assigned as Plaintiff's PREA Support Person ("PSP"). [Doc. 38-10 at 5].

Defendant James interviewed the Plaintiff so that Plaintiff could provide additional information or evidence regarding the incident. Plaintiff declined to provide an additional written statement. [Doc. 38-7 at ¶ 11]. On October 24, 2018, a nurse performed a medical screening of Plaintiff. The nurse noted that there were no injuries, deformities, swelling, or bruising to Plaintiff's wrists, ankles, or abdomen where Plaintiff claimed to have injuries. [Doc. 38-8 at 5; Doc. 38-7 at ¶ 12]. Defendant James confirmed that Plaintiff was seen by medical staff for a sick call on October 10, 2018. [Doc. 38-7 at ¶ 12]. At this visit, Plaintiff requested to renew some medications and denied any further medical needs at that time. [Doc. 38-8 at 5]. Photographs of Plaintiff were taken on October 30, 2018.[5] [Doc. 38-8 at 35-39; Doc. 38-7 at ¶ 12]. Defendant James interviewed Defendants Davis and Morris and others who were present around the conference room at the relevant times. [Doc. 38-7 at ¶ 13]. The witnesses stated that correctional staff, including Defendants Davis and Morris, did not engage in sexually inappropriate conduct toward Plaintiff. [Id. at ¶ 14]. Defendant James also reviewed the

---

[5] Defendants submitted copies of these photographs of Plaintiff in support of their summary judgment motion. The quality of the photographs, however, is too poor to aid the Court in the decisional process here.

11

video footage, which showed that the incident Plaintiff alleged did not occur. [Doc. 38-7 at ¶¶ 15-18]. The investigation showed that Plaintiff's allegations were unfounded, and the incident simply did not occur. [Doc. 38-3 at ¶¶ 10, 19]. Defendant Corpening reviewed the investigation findings and concluded that the matter "was unfounded and did not occur." [Doc. 38-8 at 6]. On January 7, 2019, after Regional Director Robert Bullis concurred in Defendant James' findings, Defendant Hamilton charged Plaintiff with filing a false PREA report. [Doc. 38-3 at ¶ 10; Doc. 38-10 at 5]. Plaintiff's housing status did not change as a result of the alleged assault or subsequent investigation. [See Doc. 38-10 at 7].

On October 24, 2018, Defendant Hamilton received another grievance from Plaintiff alleging the same October 8, 2018 incident. [Doc. 38-3 at ¶ 11]. Defendant Hamilton provided the Step One response and advised Plaintiff that his grievance was forwarded for appropriate action pursuant to the PREA Policy. [Id.]. On the same day, Defendant Hamilton notified medical and Plaintiff was evaluated. [Id.]. On October 25, 2018, Plaintiff submitted another similar grievance, which Defendant Hamilton handled in the same manner as Plaintiff's second grievance. [Id. at ¶ 12].

Defendant Ervin recalls meeting with Plaintiff on three occasions as Plaintiff's PSP for the instant PREA complaint. Ervin met with Plaintiff on

12

October 26, 2018 and on November 16, 2018 to inform Plaintiff that Ervin was Plaintiff's PSP. On January 10, 2019, Defendant Ervin met with Plaintiff to inform Plaintiff that his PREA complaint had been investigated and determined to be unfounded. [Doc. 38-10 at 5].

Defendant Watkins, the Assistant Superintendent, does not recall Plaintiff making allegations of staff sexual abuse to him at any time. [Doc. 38-11 at ¶ 11]. Had Plaintiff communicated such allegations to Watkins, they would have been documented in the investigatory materials. [Id.]. Defendant Watkins also does not recall Plaintiff or any other inmates ever making any such allegations regarding Defendants Davis or Morris. [Id. at ¶ 12]. Defendant Watkins was not involved in the PREA investigation in any way, other than being notified that it was being conducted. [Id. at ¶ 13].

## IV. DISCUSSION

In support of their motion for summary judgment, Defendants argue that sovereign immunity bars Plaintiff's official capacity claims, that Defendants Davis and Morris did not sexually assault Plaintiff, that Plaintiff's failure to protect and retaliation claims fail, and that Defendants are entitled to qualified immunity on Plaintiff's individual capacity claims because no constitutional violations occurred. [Doc. 37].

## A. Sovereign Immunity

Plaintiff sues Defendants in their individual and official capacities. [Doc. 10 at 2-4]. A suit against a state official in his official capacity is construed as against the state itself. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). It is well settled that neither a state nor its officials acting in their official capacities are "persons" subject to suit under 42 U.S.C. § 1983. Id.; see Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 n.55 (1978). Moreover, the Eleventh Amendment generally bars lawsuits by citizens against non-consenting states brought either in state or federal courts. See Alden v. Maine, 527 U.S. 706, 712-13 (1999); Seminole Tribe of Florida v. Florida, 517 U.S. 44, 54 (1996).

Although Congress may abrogate the states' sovereign immunity, it has not chosen to do so for claims under 42 U.S.C. § 1983. See Quern v. Jordan, 440 U.S. 332, 343 (1979). Likewise, North Carolina has not waived its sovereign immunity by consenting to be sued in federal court for claims brought under 42 U.S.C. § 1983. See generally, Mary's House, Inc. v. North Carolina, 976 F.Supp.2d 691, 697 (M.D.N.C. 2013) (claim under 42 U.S.C. § 1983 barred by sovereign immunity of North Carolina). As such, Defendants are entitled to summary judgment on Plaintiff's official capacity claims.

**B. Sexual Assault Claim against Defendants Morris and Davis**

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments," U.S. CONST. amend. VIII, and protects prisoners from the "unnecessary and wanton infliction of pain." Whitley v. Albers, 475 U.S. 312, 319 (1986). The Eighth Amendment also protects inmates from sexual abuse. Schwenk v. Hartford, 204 F.3d 1187, 1196-97 (9th Cir. 2000); Jackson v. Holley, 666 Fed. App'x 242, 244 (4th Cir. 2016) ("There can be little doubt that sexual abuse is repugnant to contemporary standards of decency, and that allegations of sexual abuse can amount to an Eighth Amendment violation."). "The Supreme Court has held, however, that 'not every malevolent touch by a prison guard gives rise to a federal cause of action.'" Jackson, 666 Fed. App'x at 244 (citing Wilkins v. Gaddy, 559 U.S. 34, 37, 130 S. Ct. 1175 (2010)). "An inmate who complains of a push or a shove that causes no discernible injury almost certainly fails to state a valid excessive force claim." Wilkins, 559 U.S. at 38, 130 S. Ct. 1175 (internals quotation marks omitted).

Here, the relevant forecast of evidence shows that no sexual assault occurred. Defendants Davis and Morris escorted Plaintiff to and from the tort hearing without incident. The video of the time period and location encompassing the alleged assault conclusively shows that Plaintiff's

15

allegations are not true. No reasonable jury could find in Plaintiff's favor on this evidence. In addition, the forecast of evidence also shows that a thorough PREA investigation regarding the incident was conducted and that Defendant James found that the incident did not occur. As such, the Court will grant summary judgment on Plaintiff's Eighth Amendment claim against Defendants Morris and Davis.

### C. Failure to Protect Claim against Defendant Watkins

Claims under 42 U.S.C. § 1983 based on an alleged failure to protect fall within the Eighth Amendment's prohibition against cruel and unusual punishment. The negligent failure to protect an inmate from assaults by other prisoners, or by other prison guards, does not rise to the level of an unconstitutional violation. Davidson v. Cannon, 474 U.S. 344, 348 (1986). To show deliberate indifference, a plaintiff must show that the prison official had actual knowledge of an excessive risk to the plaintiff's safety. Danser v. Stansberry, 772 F.3d 340, 346 (4th Cir. 2014) (citation omitted). In other words, the prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994).

Plaintiff alleged that he wrote Defendant Watkins before and after the assault regarding staff sexual abuse. Plaintiff further alleged that Defendant Watkins knew what was going to happen to Plaintiff and encouraged "them" to attack Plaintiff. The uncontroverted forecast of evidence, however, shows that had any such communications been made they would have been documented in the investigatory materials, but none were. As such, Plaintiff has failed to forecast evidence from which a reasonable jury could find that Defendant Watkins was deliberately indifferent to an excessive risk to Plaintiff's safety. Moreover, the forecast of evidence shows that no such assault occurred. Defendant Watkins cannot be held liable for the failure to protect Plaintiff from an assault that did not occur. No genuine issue of fact remains as to this claim and the Court will grant summary judgment for Defendant Watkins based on the alleged failure to protect.

### D. Retaliation Claim against All Defendants

An inmate has a clearly established First Amendment right to be free from retaliation for filing grievances. See Booker v. S.C. Dep't of Corrs., 855 F.3d 533, 540 (4th Cir. 2017). Plaintiff claims that Defendants' alleged conduct was done in retaliation for Plaintiff's numerous complaints and grievances and for Plaintiff providing information regarding staff bringing contraband, cell phones, and drugs into the prison. There is, however, no relevant

17

forecast of evidence of any such retaliatory action. On this forecast of evidence no reasonable jury could find that the complained of conduct ever occurred. There can be no retaliatory motive for conduct that did not occur. As such, there is no genuine issue for trial on this claim and it will be dismissed as to all Defendants.

### E. Qualified Immunity

"Qualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc). "To determine whether an officer is entitled to qualified immunity, the court must examine (1) whether the plaintiff has demonstrated that the officer violated a constitutional right and (2) whether that right was clearly established at the time of the alleged violation." E.W. ex rel. T.W. v. Dolgos, 884 F.3d 172, 178 (4th Cir. 2018) (internal quotation marks omitted). The doctrine of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law." Smith v. Ray, 781 F.3d 95, 100 (4th Cir. 2015) (internal quotation marks omitted).

Here, because Plaintiff has not forecasted evidence that Defendants violated a constitutional right, Defendants are also entitled qualified immunity on Plaintiff's individual capacity claims. The Court, therefore, grants summary judgment for Defendants on this ground as well.

## VI. CONCLUSION

For all the foregoing reasons, Defendants' motion for summary judgment is granted.

## O R D E R

**IT IS, THEREFORE, ORDERED** that Defendants' Motion for Summary Judgment [Doc. 36] is **GRANTED**.

The Clerk is respectfully instructed to substitute the true full names of Defendants as follows: (1) Nicholas Davis for FNU Davis; (2) Bradley Morris for FNU Morris; (3) Jeffrey James for FNU James; and (4) Mark Ervin for FNU Ervin.

The Clerk is respectfully instructed to terminate this action.

**IT IS SO ORDERED**.

Signed: September 13, 2021

Martin Reidinger
Chief United States District Judge